IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| STEVEN S.,<br><br>                    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>                    Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br><br>Case #4:21-cv-00100-PK<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff Steven S.'s appeal from the decision of the Social Security Administration denying his application for disability insurance benefits. The Court will affirm the administrative ruling.

I.  STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether their findings are supported by substantial evidence and whether the correct legal standards were applied.[2] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[3] The ALJ is required to consider all of the evidence, although they are not required to discuss all of the evidence.[4] If

---

[1] Pursuant to Fed. R. Civ. P. 25(d) and the last sentence of 42 U.S.C. § 405(g), Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

[2] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[3] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[4] *Id.* at 1009–10.

supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[5] The Court should evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[6] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[7]

## II. BACKGROUND

A.  PROCEDURAL HISTORY

In July 2019, Plaintiff filed an application for disability insurance benefits, alleging disability beginning on October 31, 2017.[8] Plaintiff's claim was denied initially and upon reconsideration.[9] Plaintiff then requested a hearing before an ALJ, which was held on February 4, 2021.[10] The ALJ issued a decision on February 25, 2021, finding that Plaintiff was not disabled.[11] The Appeals Council denied Plaintiff's request for review on April 22, 2021,[12] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[13]

On September 22, 2021, Plaintiff filed his complaint in this case.[14] On October 14, 2021, both parties consented to a United States Magistrate Judge conducting all proceedings in the

---

[5] *Richardson*, 402 U.S. at 390.

[6] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[7] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[8] R. at 180–93.

[9] *Id.* at 66, 85.

[10] *Id.* at 39–65.

[11] *Id.* at 7–25.

[12] *Id.* at 1–6.

[13] 20 C.F.R. § 422.210(a).

[14] Docket No. 5.

case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[15] The Commissioner filed an answer and the administrative record on December 9, 2021.[16]

Plaintiff filed his Opening Brief on February 17, 2022.[17] The Commissioner's Answer Brief was filed on April 13, 2022.[18]

B.    EVIDENCE BEFORE THE ALJ

Plaintiff has a history of melanoma for which he has received chemotherapy.[19] Plaintiff believes that his chemotherapy has resulted in cognitive difficulties.[20] Plaintiff has also been treated for diabetes and low testosterone.[21] He has been diagnosed with paresthesia in his lower extremities and peripheral neuropathy.[22] It was opined that Plaintiff's diabetes and chemotherapy could be contributing causes to these ailments.[23] He also has a history of plantar fasciitis.[24] Plaintiff has complained of always being cold and fatigued.[25]

---

[15] Docket No. 12.
[16] Docket Nos. 14, 15.
[17] Docket No. 18.
[18] Docket No. 22.
[19] R. at 298.
[20] *Id.* at 49.
[21] *Id.* at 327.
[22] *Id.* at 331–32, 374–75, 379, 388.
[23] *Id.* at 389.
[24] *Id.* at 448–49, 466.
[25] *Id.* at 336.

In March 2020, Seth Hurd, APRN, referred Plaintiff to a podiatrist to address his plantar fasciitis.[26] Thereafter, Plaintiff received injections and physical therapy, resulting in significant improvement.[27] Before the ALJ, Plaintiff testified that he was able to return to work because of these injections in his feet.[28] Because of this medical, his representative requested a closed period of disability, ending May 31, 2020.[29] But Plaintiff explained that during the alleged period of disability his plantar fasciitis, nerve damage, and cognitive deficiencies made it difficult to work.[30]

With respect to the medical opinion evidence, Plaintiff underwent a cognitive psychological exam with Christopher D. Anderson, Ph.D., in December 2019.[31] Plaintiff's test results ranged from high average in verbal comprehension to extremely low in areas of working memory and processing speed. Dr. Anderson assessed a full-scale IQ score of 84, placing Plaintiff within the low average range of intelligence. Dr. Anderson also noted the "significant discrepanc[ies] between his cognitive skills," which was "abnormal."[32] Dr. Anderson stated that Plaintiff "would likely have significant difficulty performing many tasks due to cognitive impairments with working memory and processing speed."[33]

---

[26] *Id.* at 448–49.
[27] *Id.* at 460–62, 466–67, 475, 497.
[28] *Id.* at 52.
[29] *Id.* at 42–43.
[30] *Id.* at 44.
[31] *Id.* at 429–34.
[32] *Id.* at 434.
[33] *Id.*

Plaintiff also underwent a physical examination with Matthew Call, D.O., in December 2019.[34] Dr. Call noted muscle pain and stiffness. He opined that Plaintiff could stand and walk for about four hours in an eight-hour workday. Dr. Call stated that Plaintiff could carry about ten pounds both frequently and occasionally. He also stated that Plaintiff should be restricted to occasional bending, stooping, squatting, crouching, and crawling.

In March 2020, APRN Hurd opined that Plaintiff could stand/walk for less than two hours of an eight-hour day, would be off task for 20% or more of the day, would miss work four days or more per month, and be less than 50% as efficient as an average worker.[35]

C.  THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that there was a 12-month period during which Plaintiff had not engaged in substantial gainful activity.[36] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: type 1 diabetes, status post stage 4 melanoma with chemotherapy, plantar fascial fibromatosis, low testosterone, major depressive disorder, and a neurocognitive disorder.[37] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.[38] The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with

---

[34] *Id.* at 436–42.
[35] *Id.* at 446–47.
[36] *Id.* at 12–13.
[37] *Id.* at 13.
[38] *Id.* at 13–14.

certain restrictions.[39] At step four, the ALJ determined that Plaintiff could perform his past relevant work as a courier outside deliverer as generally performed.[40] In addition, at step five, the ALJ found that there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform and, therefore, he was not disabled.[41]

## III.  DISCUSSION

Plaintiff argues that the ALJ erred in his evaluation of the medical opinion evidence. He also argues that the ALJ erred in refusing to consider a closed period of disability. The Court discusses each argument in turn.

A.  MEDICAL OPINION EVIDENCE

For applications filed on or after March 27, 2017, an ALJ is not required to defer to or give any specific weight to medical opinions or prior administrative medical findings.[42] Rather, the ALJ considers them using the criteria in 20 C.F.R. § 404.1520c(c): (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. The most important criteria for determining persuasiveness are the supportability and consistency.[43] "For supportability, the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase."[44] "Consistency,

---

[39] *Id.* at 15–19.

[40] *Id.* at 19.

[41] *Id.* at 19–21.

[42] 20 C.F.R. § 404.1520c(a).

[43] *Id.* § 404.1520c(a), (b)(2).

[44] *John H. v. Saul*, No. 2:20-CV-00255-JCB, 2021 WL 872320, at *4 (D. Utah Mar. 8, 2021) (internal quotation marks and citation omitted).

on the other hand, is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record."[45]

The ALJ must articulate "how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the] case record."[46] The ALJ must explain how they considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings, but is generally not required to explain how they considered other factors.[47] Social Security Ruling 96-8p emphasizes that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."[48] "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."[49]

Here, Plaintiff argues that Dr. Anderson, Dr. Call, and APRN Hurd opined limitations in excess of those found by the ALJ in his RFC assessment. As the Court discusses in the following sections, the ALJ's evaluation of each medical opinion does not amount to reversible error.

1. Dr. Anderson

As noted, Dr. Anderson stated that Plaintiff "would likely have significant difficulty performing many tasks due to cognitive impairments with working memory and processing

---

[45] *Id.* (internal quotation marks and citation omitted).

[46] 20 C.F.R. § 404.1520c(b).

[47] *Id.* § 404.1520c(b)(2).

[48] SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)

[49] *Id.*; *see also Givens v. Astrue*, 251 F. App'x 561, 568 (10th Cir. 2007) ("If the ALJ rejects any significantly probative medical evidence concerning [a claimant's] RFC, he must provide adequate reasons for his decision to reject that evidence.").

7

speed."[50] The ALJ found this statement "somewhat persuasive,"[51] but only to the extent it was consistent with the ALJ's mental RFC assessment. The ALJ's discussion of the persuasive value of Dr. Anderson's opinion could certainly have been more robust, but remand is not required.

The ALJ discussed Dr. Anderson's evaluation in detail in other parts of his decision when evaluating Plaintiff's mental impairments.[52] In so doing, the ALJ found that Plaintiff had moderate limitations in understanding, remembering, and applying information; concentrating, persisting or maintaining pace; and adapting and managing himself.[53] As a result of these moderate limitations, the ALJ limited Plaintiff to performing "simple work tasks that could be learned in up to three months or less."[54] Thus, the ALJ included limitations in his RFC assessment that are consistent with Dr. Anderson's opinion, which supports the ALJ's evaluation that Dr. Anderson's opinion was somewhat persuasive. Moreover, the ALJ's RFC assessment is consistent with the opinions of the state agency medical consultants—Charles Raps, Ph.D., and Matthew Park, Ph.D.—which the ALJ found persuasive, and Plaintiff has not challenged that finding.

Plaintiff further argues that the ALJ inappropriately speculated that the abnormal findings by Dr. Anderson could indicate "that they may not be a true reflection of the claimant's cognitive ability."[55] But this statement is a fair assessment of Dr. Anderson's evaluation. Dr. Anderson

---

[50] R. at 434.

[51] *Id.* at 18.

[52] *Id.* at 13–14.

[53] *Id.*

[54] *Id.* at 15.

[55] *Id.* at 18.

8

noted "significant discrepancies . . . between cognitive skills," and concluded that "[s]uch discrepancy is abnormal."[56] The ALJ did not overstep by suggesting that these abnormal discrepancies could call into question the full nature of Plaintiff's cognitive abilities. Regardless, Plaintiff has failed to demonstrate any harmful error because of this statement.

    2.    *Dr. Call*

The ALJ found Dr. Call's opinion "mostly persuasive."[57] However, the ALJ did not adopt the carrying restriction opined by Dr. Call. While Dr. Call limited Plaintiff to carrying ten pounds, the RFC assessment allowed for occasional lifting of twenty pounds. The ALJ did not explicitly discuss why he rejected Dr. Call's ten-pound limit, but he did note Dr. Call's opinion. In addition, the ALJ found the opinions of state agency consultants Victoria Judd, M.D., and Dennis H. Gordon, M.D., to be persuasive. Both Dr. Judd and Dr. Gordon opined that Plaintiff could lift twenty pounds occasionally,[58] providing support for the ALJ's RFC determination. Again, though the ALJ's discussion is limited, it is supported.

    3.    *APRN Hurd*

Finally, the ALJ found that APRN Hurd's limiting opinions were not persuasive because they were not consistent with Plaintiff's ability to perform medium work after the alleged onset date and were based on a limited treatment history. These reasons fall squarely within the factors to be considered under the regulations, including supportability, consistency, length of the

---

[56] *Id.* at 434.
[57] *Id.* 18.
[58] *Id.* at 77, 94.

treatment relationship, and frequency of examination.[59] And they are supported by substantial evidence. APRN Hurd notes in his opinion that he has only seen Plaintiff twice.[60] Additionally, Plaintiff was able to return to work shortly after APRN Hurd issued his opinion, undermining its persuasive value. While Plaintiff points out that APRN Hurd was involved in other aspects of Plaintiff's care, such as referring him to a podiatrist, and that Plaintiff received accommodations for the medium work relied upon by the ALJ, neither argument merits reversal.

B.  CLOSED PERIOD

Plaintiff next argues that the ALJ failed to properly consider his request for a closed period of disability. A closed period is a case "in which a disability claimant is found to have been disabled for a finite period of time," but whose condition has medically improved to allow them to return to work.[61]

As stated, Plaintiff's representative requested a closed period based on Plaintiff's ability to return to work. Plaintiff claims that the ALJ "provided no evaluation of the evidence related to this request," and that it was "legal error for the ALJ to simply not evaluate this request."[62] But Plaintiff's argument rests upon an incorrect premise. The ALJ noted that Plaintiff requested a closed period and concluded "that the claimant was not disabled for the entire period under consideration."[63] Thus, the ALJ did evaluate Plaintiff's request for a closed period and rejected it. Plaintiff provides no further basis to challenge this portion of the ALJ's decision.

---

[59] 20 C.F.R. § 1520c(c)(1), (2), (3)(i)–(ii).

[60] R. at 446.

[61] *Shepherd*, 184 F.3d at 1198; *see also* 20 C.F.R. § 404.1594.

[62] Docket No. 18, at 12.

[63] R. at 13.

## IV. CONCLUSION

Accordingly, the Court hereby AFFIRMS the decision of the Commissioner.

DATED this 27th day of May, 2022.

BY THE COURT:

PAUL KOHLER
United States Magistrate Judge